UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------x
Clemens W. MARTIN,

      Plaintiff,

 -against-           MEMORANDUM AND ORDER
                  05-CV-2157 (ILG)
Mary Ann GANTNER, District Director,
United States Citizenship & Immigration
Services,

      Defendant.
------------------------------------------------x

GLASSER, United States District Judge:

## INTRODUCTION

Mr. Clemens W. Martin ("Martin" or "Plaintiff") appeals an adverse determination of his naturalization application by the United States Citizenship and Immigration Services ("CIS," "Defendant" or "Government"). Defendant moves to dismiss, contending that a prior conviction under N.Y. Penal Law § 175.10 for "falsifying business records in the first degree" makes Plaintiff ineligible for naturalization.

## BACKGROUND

**I. Mr. Clemens W. Martin**

 **A. Family History**

The following facts are taken from the Complaint and are assumed to be true for the purpose of this motion. On February 20, 1931 Clemens W. Martin was born in Germany. He immigrated to the United States on September 18, 1952, and has been a lawful permanent resident for 54 years. (Compl. ¶ 5). On March 15, 1954, Martin

-1-

married Ingeburg Mueller ("Mueller"), who is now a U.S. citizen. (Compl. ¶ 6). Between January 5, 1955 and December 11, 1956, when he was honorably discharged, Martin served in the U.S. military. (Compl. ¶ 5). Since July of 1974, Martin and his family have lived in New York. (Compl. ¶ 2). Martin and Mueller have four children and four grandchildren, all of whom are U.S. citizens and live in or around New York City. (Compl. ¶ 6).

### B. Deportation Proceedings

On June 30, 2000 Martin and his wife returned from a 15-day trip to Germany. At JFK International Airport, Martin was questioned by INS agents and his arrest in February 1998 and subsequent conviction for falsifying business records in the first degree was revealed (to be discussed hereafter). Based upon that revelation he was ordered to report for a deferred inspection on August 29, 2000. (Compl. ¶ 7). Following inspection, Martin was served with a notice to appear for removal proceedings by letter dated February 1, 2001. On June 20, 2001 Martin filed an application for naturalization, and removal proceedings were stayed pending a final determination of that application. (Compl. ¶ 10).

On June 2, 2003, Martin was interviewed at the CIS offices regarding his naturalization application. In an undated decision handed down roughly four months after the interview, CIS denied his application asserting a lack of good moral character based upon his conviction, which it found constituted a violation of 8 U.S.C. § 1101(a)(43)(M)(i) (hereinafter "(M)(i)"). (Compl. ¶ 11; "IJ Decision," Attached to the Complaint). Among the offenses in section 1101(a)(43) which lists what that statute defines as "aggravated felonies" is "an offense that–(i) involves fraud or deceit in which

the loss to the victim or victims exceeds $10,000..." § 1101(a)(43)(M)(i). No other basis for denial of his naturalization application was asserted by the CIS.

Martin timely appealed the decision. (Compl. ¶ 12). On October 5, 2004, a hearing on Martin's appeal was conducted by CIS and on March 12, 2005 his appeal was denied. (Compl. ¶ 12; "Decision on Review of Denial of Naturalization Application," Attached to Complaint). Martin now brings this action seeking de novo review of the CIS decision. Before the Court is the Defendant's motion to dismiss his Complaint.

## II. The Offense

On February 11, 1998 Plaintiff was arrested pursuant to a felony complaint signed by Detective Frances Braddock, charging him with grand larceny in the second degree[1] under N.Y. Penal Law § 155.40 (hereinafter "Larceny Compl.").[2] Detective Braddock averred that Aurther Wirsing, owner of Manhattan Floor Supplies ("MFS"), informed her that the defendant had taken property from the business without permission, estimated by Wirsing to be valued at over $50,000. (Id.).

Nearly a year and a half later and on June 16, 1999, a second felony complaint was sworn to by Aurther Wirsing (("Business Records Compl.") attached to the Complaint), charging a violation of § 175.10, falsification of business records in the first degree.[3] Wirsing averred that the defendant was employed by MFS and that during that time Martin's responsibilities had included ordering parts for floor sanding equipment.

---

[1] As stated at N.Y. Penal Law § 155.40: "A person is guilty of grand larceny in the second degree when he steals property and when: (1) the value of the property exceeds fifty thousand dollars..." Grand larceny in the second degree is a class C felony. N.Y. Penal Law § 155.40.

[2] The parties identify exhibits by number, but the briefs submitted to the court were unnumbered.

[3] Falsifying business records in the first degree is a class E felony. N.Y. Penal Law § 175.10.

He further averred that "defendant did order parts which were paid for by Manhattan Floor Supply, but were used by the defendant in his private repair business." (Id.).

On June 16, 1999, the same day that the Business Records Complaint was signed by Aurthur Wirsing, Martin waived indictment and pleaded guilty to an Information alleging one count of falsifying business records in the first degree, in violation of New York Penal Law § 175.10.  Handwritten on the February 1998 Larceny Complaint and also dated June 16, 1999 is the phrase "dismissed not ADA, 6/16/99."

### III.   N.Y. Penal Law  § 175.10

New York Penal Law § 175.10 states in relevant part:

> A person is guilty of falsifying business records in the first degree when he commits the crime of falsifying business records in the second degree, and when his intent to defraud includes an intent to commit another crime or to aid or conceal the commission thereof.

Section 175.05 defines the crime of falsifying business records in the second degree–elements which must be satisfied to convict under § 175.10.  It states in relevant part:

> A person is guilty of falsifying business records in the second degree when, with intent to defraud, he:
>
> 1. Makes or causes a false entry in the business records of an enterprise; or
>
> 2. Alters, erases, obliterates, deletes, removes or destroys a true entry in the business records of an enterprise; or
>
> 3. Omits to make a true entry in the business records of an enterprise in violation of a duty to do so which he knows to be imposed upon him by law or by nature of his position; or
>
> 4. Prevents the making of a true entry or causes the omission thereof in the business records of an enterprise.

N.Y. Penal Law § 175.10 thus requires the satisfaction of two elements for the conviction of the crime of falsifying business records in the first degree: (1) with intent to defraud, defendant commits the crime of falsifying business records in the second degree; and (2) does so with the intent to commit, aid or conceal the commission of another crime.  A critical reading of falsifying records in the second degree compels the conclusion that one can commit that crime without any resulting monetary loss, unlike larceny, which is defined, in essence, as stealing property with intent to deprive the owner of it.  N.Y. Penal Law § 155.05.  Moreover, the degrees of grand larceny, from the first to the fourth, are calibrated to the monetary amount of the theft.  N.Y. Penal Law §§ 155.30-155.42.  It would follow, therefore, that the monetary loss could only be attributable to the other crime alluded to in the second element of falsifying business records in the first degree.

On October 4, 1999 Martin was sentenced to a conditional discharge of three years, a special assessment of $155.00, and ordered to pay restitution to MFS in the amount of $104,676.00, which he paid in full that day. (Compl. ¶ 8).  The record is silent as to how that sum was arrived at.  The Information to which Martin pleaded did not allege a monetary loss.  ("Information," attached to the Complaint).  The ordered restitution was not stated to be attributable to the crime to which Martin pleaded nor need it have been.  Indeed, it is virtually certain that the restitution ordered was attributable to the grand larceny as the relevant statute would make manifest.  N.Y. Penal Law § 60.27(1) provides that the court "may require restitution or reparation as part of the sentence imposed upon a person convicted of an offense…"  Section 60.27(4)(a) then provides that "the term 'offense' shall include the offense for which a

defendant was convicted, as well as any other offense that is part of the same criminal transaction or that is contained in any other accusatory instrument disposed of by any plea of guilty by the defendant to an offense." § 60.27(4)(a) (emphasis added).  As has been stated, the crime of falsification of business records does not require a monetary component, but the offense contained in the other accusatory instrument--the grand larceny felony complaint--that was disposed of when the defendant pleaded guilty to falsification of business records in the first degree, is instinct with a monetary component.

The conclusion is inescapable that between February 11, 1998 when he was charged in a felony complaint with Grand Larceny in the second degree but not indicted and June 16, 1999, plea negotiations were ongoing and resulted in his plea to a Class E felony punishable by imprisonment not to exceed four years instead of to a Class C felony punishable by imprisonment up to 15 years.  Although, in that respect, his plea was to a lesser offense, in reality, the collateral consequences of that plea were disastrous, risking denial of the privilege of United States citizenship, notwithstanding continuous residence in the country for 54 years and except for this single aberrant lapse, essentially law abiding.

The conclusion is also inescapable that pleading guilty to falsification of business records in the first degree was a negotiated plea because satisfaction of the requisite element of that crime, namely falsification of business records in the second degree, was problematic.  Mr. Wirsing, in his complaint, charged that Mr. Martin ordered parts on behalf of and paid for by Manhattan Floor Supply and then, as the grand larceny felony complaint alleges, took the property from the business without permission and, as Mr.

Wirsing charged, used them in his own private business. There was no false entry in the records of MFS, no alteration, obliteration, deduction or removal of any business record entry nor an omission to make a true entry in the business records of MFS, any one of which is a prerequisite to falsifying business records in the second degree and require no monetary loss. In short, what Mr. Martin committed was larceny–he stole MFS property.

## DISCUSSION

### I. 12(b)(6) Motion to Dismiss

Defendant has moved the Court to dismiss the Complaint pursuant to Fed. R. Civ. P. Rule 12(b)(6). On a 12(b)(6) motion, the Court accepts as true the factual allegations in the Complaint, viewing it in light most favorable to the non-moving party. Crespo v. New York City Transit Authority, 2002 WL 398805 (E.D.N.Y. 2002) (Glasser, J.) (citing Bolt Elec., Inc. v. City of N.Y., 53 F.3d 465, 469 (2d Cir. 1992)). Dismissal under Rule 12(b)(6) is only appropriate if "it appears beyond doubt that the Plaintiff can prove no set of facts in support of her claim which entitle her to relief." Walker v. City of N.Y., 974 F.2d 293, 298 (2d Cir. 1992).

### II. The Parties' Arguments

The Government moves to dismiss solely on the basis articulated by CIS. That is, that Plaintiff has committed an aggravated felony under 8 U.S.C. § 1101(a)(43)(M)(i) and is therefore ineligible for naturalization pursuant to 8 U.S.C. § 1101(f)(8). In opposition, Plaintiff contends that his conviction of falsifying business records in the first degree should not constitute an aggravated felony under 8 U.S.C. § 1101(a)(43)(M)(i). First, he contends that (M)(i) requires that the $10,000 minimum be

an actual element of the underlying offense in order to constitute an "aggravated felony." Second, Plaintiff urges a "common law" interpretation of "fraud and deceit" in the statute, and argues that N.Y. Penal Law § 175.10 does not reflect these common law elements.[4] Defendant contends that these arguments lack merit.[5] However, the Court does not have occasion to reach any of these arguments because the reviewable record drives the Court to conclude that the $10,000 loss evidenced solely from the ordered restitution was not attributable to the crime of conviction, falsifying of business records in the first degree, but attributable instead to the "offense contained in the other accusatory instrument," the larceny that was disposed of by the plea. The Court is therefore compelled to deny Defendant's motion to dismiss.

## III. Jurisdiction

Plaintiff asserts that the CIS naturalization determination was issued more than four months after the interview, and that jurisdiction is therefore proper under 8 U.S.C. § 1447, which provides that:

> If there is a failure to make a determination under section 1446 of this title before the end of the 120-day period after the date on which the examination is conducted under such section, the applicant may apply to

---

[4] Plaintiff concedes that there is no basis to appeal on the ground that, as a veteran, the aggravated felony bar to good moral character is not applicable to him. See Boatswain v. Gonzales, 414 F.3d 413 (2d Cir. 2005).

[5] Defendant also asserted, in its Reply, arguments not mentioned in its "Memorandum of Law in Support of Motion to Dismiss." Plaintiffs respond with a sur-reply. As new arguments, they will not be considered. Evangelista v. Ashcroft, 359 F.3d 145, 155 n. 4 (2d Cir. 2004) ("we will not consider an argument raised for the first time in a reply brief"); United States v. Yousef, 327 F.3d 56, 115 (2d Cir. 2003); Conn. Indem. Co. v. 21st Century Trans., Inc., 186 F.Supp.2d 264, 274 n. 8 (E.D.N.Y. 2002). Moreover, Defendant withdrew those arguments prior to oral argument. (See Letter from Elliott Schachner to Judge Glasser, 7/05/2006, Docket No. 12). Finally, though it hardly need be said, the Court's Individual Rules state that "sur-reply papers shall not be filed or considered." (Judge Glasser's Individual Rules, IV.B). Arguments in Plaintiff's sur-reply submission are therefore also not considered.

> the United States district court for the district in which the applicant
> resides for a hearing on the matter. Such court has jurisdiction over the
> matter and may either determine the matter or remand the matter, with
> appropriate instructions, to the Service to determine the matter.

8 U.S.C. § 1447(b).

The Government has not contested this Court's jurisdiction or that the 120 day limitation of the statute was satisfied, but urges that jurisdiction is instead appropriate under 8 U.S.C. § 1421(c), which provides that:

> A person whose application for naturalization under this subchapter is
> denied, after a hearing before an immigration officer under section 1447(a)
> of this Title, may seek review of such denial before the United States
> district court for the district in which such person resides in accordance
> with chapter 7 of Title 5. Such review shall be de novo, and the court shall
> make its own findings of fact and conclusions of law and shall, at the
> request of the petitioner, conduct a hearing de novo on the application.

Whether jurisdiction is based upon § 1421(c) or § 1447(b) is largely academic, since both would result in the application of de novo review by this Court. See Zaranska v. U.S. Dep't of Homeland Security, 400 F.Supp.2d 500, 509 (E.D.N.Y. 2005).

## IV.  Requirements for Naturalization Under the Immigration and Nationality Act ("INA")

Title 8 U.S.C. § 1427 outlines the prerequisites required of all applicants for naturalization and provides in relevant part that:

> (a) No person, except as otherwise provided in this subchapter, shall be
> naturalized unless such applicant, …(3) during all the periods referred to
> in this subsection has been and still is a person of good moral character,
> attached to the principles of the Constitution of the United States, and well
> disposed to the good order and happiness of the United States.

8 U.S.C. § 1427(a).

The statute also defines factors governing a determination of good moral character:

> (e) In determining whether the applicant has sustained the burden of

establishing good moral character and the other qualifications for citizenship specified in subsection (a) of this section, the Attorney General shall not be limited to the applicant's conduct during the five years preceding the filing of the application, but may take into consideration as a basis for such determination the applicant's conduct and acts at any time prior to that period.

8 U.S.C. § 1427(e).

Pursuant to 8 U.S.C. § 1101(f)(8), any person convicted of an "aggravated felony" shall not be considered a person of good moral character. As noted earlier, Mr. Martin's conviction of falsifying business records in the first degree was regarded as an aggravated felony pursuant to § 1101(a)(43)(M)(i) and was the reason for denying his application for naturalization.

The Court is cognizant of the statutory definition of aggravated felony as including "theft offenses," 8 U.S.C. § 1101(a)(43)(G), viz., "a theft offense (including receipt of stolen property)...for which the term of imprisonment [is][6] at least one year." Mr. Martin would not have been denied naturalization had his conduct been viewed as a theft offense because he was not actually sentenced to a term of imprisonment for at least one year. See, United States v. Hidalgo-Macias, 300 F.3d 281 (2d Cir. 2002) (language of § 1101(a)(43)(G) refers to actual term imposed) (citing United States v. Pacheco, 225 F.3d 148, 154 (2d Cir. 2000); see also United States v. Guzman-Bera, 216 F.3d 1019, 1020 (11th Cir. 2000) (per curiam); Alberto-Gonzalez v. I.N.S., 215 F.3d 906, 910 (9th Cir. 2000); United States v. Graham, 169 F.3d 787, 790-91 (3d Cir. 1999)).

**V.  Analysis**

The irony of the devastating prospect facing Mr. Martin is traceable to the tangled

---

[6] The statute itself notes that the omission of "is" is a scrivener's error.

statutory web in which he is ensnarled. The CIS determination that he is not a person of good moral character is based upon the statute, 8 U.S.C. § 1101(f)(8), which deprives him of that standing because he pleaded guilty to the comparatively benign state offense of falsifying a business record, for which he was sentenced to a conditional discharge. The state statute permitted a sentence of conditional discharge for both larceny in the second degree and falsifying business records in the first. (C.P.L. §§65.05, 60.01). Conditional discharge could have been imposed "if the court, having regard to the nature and circumstances of the offense and to the history, character and condition of the defendant [was] of the opinion that neither the public interest nor the ends of justice would be served by a sentence of imprisonment and that [even] probation supervision is not appropriate." N.Y. Penal Law § 65.05(1)(a). His plea of guilty to falsifying a business record however, triggered 8 U.S.C. § 1101(a)(43)(M)(i) and raised the specter of a sentence far worse than imprisonment, namely, removal from the country in which he has lived for 54 years and separation from his four children and grand children.

In view of the foregoing, the Court will not unduly belabor this Opinion with an extended discussion of the categorical approach to aggravated felonies under 8 U.S.C. § 1101(a)(43). Suffice it to say that a reading of Shepard v. United States, 544 U.S. 13, 125 S.Ct. 1254 (2005); Taylor v. United States, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990); Vargas-Sarmiento v. U.S. Dep't of Justice, 2006 WL 1223105, *6 (2d Cir. 2006); Nugent v. Ashcroft, 367 F.3d 162 (3d Cir. 2004); Kamagate v. Ashcroft, 385 F.3d 144, 152 (2d Cir. 2004); Munroe v. Ashcroft, 353 F.3d 225 (3d Cir. 2003); Dickson v. Ashcroft, 346 F.3d 44, 48 (2d Cir. 2003); Valansi v. Ashcroft, 278 F.3d 203, 210 (3d Cir. 2002); Ming Lam Sui v. I.N.S., 250 F.3d 105 (2d Cir. 2001); Mugalli v. Ashcroft, 258

F.3d 52 (2d Cir. 2001); Kuhali v. Reno, 266 F.3d 93 (2d Cir. 2001); United States v. Ben Zvi, 242 F.3d 89, 99, n. 3 (2d Cir. 2001), and most particularly Singh v. Ashcroft, 383 F.3d 144, 147-48 (3d Cir. 2004), would compel the conclusion that the formal categorical approach would not be applicable to this case.

## CONCLUSION

I am not unmindful that a more nuanced construction of the operative statutes discussed above might lead to another result, but if there is a doubt as to which construction should carry the day, I would urge the construction at which I have arrived for the reason put so succinctly and eloquently in Fong Haw Tan v. Phelan, 333 U.S. 6, 10, 68 S.Ct. 374 (1948):

> We resolve the doubts in favor of that construction because deportation is a drastic measure and at times the equivalent of banishment of exile. It is the forfeiture for misconduct of a residence in this country. Such a forfeiture is a penalty. To construe this statutory provision less generously to the alien might find support in logic. But since the stakes are considerable for the individual, we will not assume that Congress meant to trench on his freedom beyond that which is required by the narrowest of several possible meanings of the words used.
> Id. at 10 (citation omitted).

For the foregoing reasons, the Defendant's motion to dismiss is denied.


SO ORDERED.


Dated:  August 4, 2006
        Brooklyn, New York

                                            _____/s/_____
                                            I. Leo Glasser
                                            United States District Judge

On this day, a copy of the foregoing was sent electronically to:

Thomas Edward Moseley
Fragomen, Del Rey, Bernsen & Loewy, P.C.
One Gateway Center
Suite 2600
Newark, NJ 07102

Attorneys for Plaintiffs


Elliot M. Schachner, AUSA
United States Attorneys Office
One Pierrepont Plaza, 14th Floor
Brooklyn, NY 11201

Attorneys for Defendants